IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BABAR J. SHAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 04-cv-0513-MJR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM and ORDER

**REAGAN, District Judge:**

### A. Introduction

Before this Court is plaintiff Babar J. Shah's motion to vacate, set aside or correct his sentence pursuant to **28 U.S.C. § 2255** (Doc. 1). Having carefully considered the evidence and arguments presented by Shah and the Government, the Court **DENIES** Shah's § 2255 petition (Doc. 1) for the reasons that follow.

### B. Factual & Procedural Background

On April 18, 2002, Shah was traveling in a rental vehicle driven by his co-defendant, Amad Zambrana (*see* underlying criminal case, Case No. 03-CR-30196, *United States v. Shah, et al.*). The two men apparently were pulled over for crossing the white divider-line in the middle of the highway upon which they were traveling. Subsequent to pulling their vehicle over, Collinsville Police Officer Michael Reichert requested Zambrana's license and registration. Zambrana responded by presenting his license along with a rental agreement for the vehicle. Officer Reichert then asked Shah for identification. In response, Shah presented a military identification card.

Upon reviewing the rental agreement for the vehicle, Officer Reichert noted that the person designated as the renter of the vehicle was not present. In addition, Reichert noticed trash, maps, and a small duffle bag apparently containing a change of clothes within the vehicle. Reichert also determined that the men appeared to have been traveling for an extended period of time. Officer Reichert asked Zambrana to exit the vehicle, explained the reason for the stop, and asked about his trip. Zambrana responded that he and Shah were driving from Maryland to California to visit friends who were going off to war.

Officer Reichert asked Zambrana how long it had taken them to get to California. Zambrana told the officer that they drove straight through for 36 hours. After talking to Zambrana, Officer Reichert then questioned Shah about the purpose of their trip. Shah told the officer that they went to California in order to sight-see and visit a friend. In Reichert's estimation, this response was inconsistent with Zambrana's response regarding the purpose of the trip. In addition, Reichert noticed that Shah seemed extremely nervous (apparently Shah was shaking, avoiding eye contact, and crossing and uncrossing his arms in a nervous manner) while answering his questions.

Officer Reichert considered the date on the rental agreement and the fact that the two men were already headed back home, and thought that this seemed like an extremely fast trip, with little time to actually visit with their friends. From this, and other factors, Reichert began to suspect that the two men were transporting contraband.

After further questioning Zambrana, Reichert informed the two men that they were free to leave. Nonetheless, as the two men started to walk away, Reichert decided to continue questioning Zambrana, inquiring as to why he and Shah seemed so nervous, and again inquiring whether the two men were transporting anything illegal. After asking Zambrana this series of

questions and gauging his responses, Reichert asked for permission to search the vehicle. Although Zambrana refused, Officer Reichert informed Zambrana that he was detaining the rental car until a canine could be walked around the car. While waiting for the canine unit to arrive, Zambrana gave Officer Reichert permission to search the vehicle.

As Officer Reichert began to search the car, the canine unit arrived. The dog was placed in the vehicle and immediately alerted on the center console area of the vehicle. In this area, Officer Reichert found a package containing approximately 95 grams of heroin and 244 grams of cocaine.

Shah and Zambrana were arrested, read their *Miranda* rights, and transported to the Collinsville Police Department. At the police department, Shah was asked if he wanted to cooperate, and he responded that he wanted to talk to a lawyer. Following booking and fingerprinting, as Shah was being transported to a jail cell, he asked if he could speak to a detective. Shah then informed Detective David Roth that he wanted to cooperate and give a written statement regarding the narcotics. Shah was then read his *Miranda* rights, indicated that he understood these rights, and signed a *Miranda* waiver (*see* Doc. 15, Ex. 4). Shah subsequently provided a written statement, in which he admitted that he was "not on the leasing agreement at all, [and] was not even to be a driver of the car." *Id.* In addition, Shah admitted that he and Zambrana drove to California "to pick up some drugs," obtained "cocaine and heroin ... in a plastic bag," concealed the drugs inside the center console of their vehicle, and were traveling back home when they were arrested. *Id.*

Initially, both Shah and Zambrana plead not guilty to charges of possession with intent to distribute cocaine and heroin. On December 12, 2003, however, Shah signed a Plea Agreement, changing his plea to guilty (*see* Docs. 16, 17, Case No. 03-CR-30196). Shah was

3

sentenced to a term of 30 months on March 22, 2004. Shah filed the instant motion on July 23, 2004; it is therefore timely. *See* **28 U.S.C. § 2255.**

In the meantime, Shah's co-defendant, Zambrana, chose not to plea guilty and instead moved to suppress evidence and statements. On April 19, 2004, the Court granted Zambrana's motion. That decision was ultimately appealed, and the Seventh Circuit remanded the case to this Court, directing the Court to further explain its basis for granting the motion to suppress (*see* Doc. 111, Case No. 03-CR-30196). The Court did so, and issued its final decision on November 30, 2005, granting Zambrana's motion to suppress narcotics found in his rental car, as well as statements made by Zambrana and co-defendant Shah (*see* Doc. 112, Case No. 03-CR-30196).

As a result of that ruling, this Court ultimately dismissed Zambrana from the indictment in the underlying criminal case.[1]

On October 20, 2006, this Court held a non-evidentiary hearing on Shah's § 2255 petition, at which the Court heard extensive oral argument from both Shah and the Government. Having carefully considered those arguments, as well as all written submissions by the parties to this matter, the Court now rules as follows.

### C. Analysis

**28 U.S.C. § 2255** authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law...." **28 U.S.C. § 2255**.

---

[1] The Court allowed the parties in the present matter the opportunity to file supplemental briefings addressing the impact of that decision on Shah's § 2255 petition. Only the Government took advantage of this opportunity (Doc. 18).

Relief under § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise "of constitutional magnitude." **Broadway v. United States**, 104 F.3d 901, 903 (7th Cir. 1997). *Accord* **Corcoran v. Sullivan**, 112 F.3d 836, 837 (7th Cir. 1997)(§ 2255 relief is available only to correct "fundamental errors in the criminal process").

In other words, as the Seventh Circuit has explained, § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." **Harris v. United States**, 366 F.3d 593, 594 (7th Cir. 2004). *Accord* **Borre v. United States**, 940 F.2d 215, 217 (7th Cir. 1999).

*Whether an Evidentiary Hearing was Necessary in this Matter*

A district court may not dismiss a § 2255 motion without an evidentiary hearing unless the record conclusively demonstrates that the defendant is entitled to no relief. ***Dugan v. United States,*** 18 F.3d 460, 464 (7th Cir. 1994), *citing Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir. 1989). In this matter, for the reasons discussed *infra*, the Court **FINDS** that the record before it *does* conclusively demonstrate that Shah is entitled to no relief.

Nonetheless, in an abundance of caution, this Court still allowed the parties to request an evidentiary hearing in order to more fully develop the record, if the parties so desired. To afford the parties this opportunity, the Court made clear in open court that it would hold an evidentiary hearing if either party were to request one within a seven-day period expiring on October 27, 2006 (*see* Doc. 20). Neither party requested an evidentiary hearing within that time period. Additionally, in a letter sent directly to this Court, dated October 25, 2006, counsel for Shah specifically informed this Court that Shah "[did] *not* wish to have an evidentiary hearing" in this matter (*see* Doc. 21,

5

"Response to Court's Order of October 20, 2006)(emphasis in original). In light of this correspondence, and in light of this Court's own determination, pursuant to *Dugan,* that an evidentiary hearing is not required, the Court now decides Shah's § 2255 motion on the basis of all written submissions composing the record of this matter, as well as oral argument of counsel presented at the October 20, 2006, hearing.

### *Whether Shah Waived His Right to Collateral Appeal*

Before delving into the substance of Shah's § 2255 petition, this Court must determine whether it has jurisdiction to consider his arguments. The Government argues that it does not, as Shah waived his right to bring a collateral attack pursuant to § 2255 when he plead guilty to the underlying offense. Specifically, the Government asserts, Shah gave up his right to file a motion to suppress evidence by pleading guilty and gave up his right to attack his sentence and/or conviction by entering into a cooperating agreement whereby he also waived those rights.

"It is well-settled in [the Seventh Circuit], as well as in virtually every circuit that has considered the question, that defendants may waive their right to appeal as part of a written plea agreement, and [the Seventh Circuit] has consistently upheld valid appeal waivers and dismissed appeals taken in contravention." *United States v. Woolley*, **123 F.3d 627, 632 (7th Cir.1997)**. Because "[p]lea agreements are governed by ordinary contract principles," *United States v. Barnes*, **83 F.3d 934, 938 (7th Cir.1996),** "[w]aivers of appeal must stand or fall with the agreements of which they are a part." *United States v. Wenger*, **58 F.3d 280, 282 (7th Cir.1995)**. A waiver of appeal contained in a plea agreement is enforceable as long as the record clearly demonstrates that it was made knowingly and voluntarily. *United States v. Hicks*, **129 F.3d 376, 377 (7th Cir.1997);** *United States v. Agee*, **83 F.3d 882, 885 (7th Cir.1996)**. The content and language of the plea

agreement itself, as well as the colloquy where necessary, governs the determination as to the validity of the waiver. ***Woolley*, 123 F.3d at 632**.

In this matter, Shah waived his right to bring a collateral appeal pursuant to § 2255. The plea agreement signed by Shah expressly states that "[Shah] *also* waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255" (Doc. 15, Ex. 6, p.8). Moreover, at Shah's change of plea hearing, this Court specifically referenced the plea agreement, stating: "[U]nder paragraph 12, you are giving up your right to appeal any sentence that I give you ... [t]here is a separate appeal called Section 2255, ... [b]y agreeing to paragraph 12, you are agreeing to give up your right to appeal both of those ways" (Doc. 15, Ex. 2, Transcript of Change of Plea Hearing ("C.P. Tr."), pp. 12-13). The Court then asked Shah, "do you understand that ?" *Id.* Shah responded, "Yes, sir." *Id.* The record is clear then, that by entering the plea agreement, Shah knowingly and voluntarily waived his right to file a petition under § 2255. The Government now asks the Court to enforce this waiver.

In ***Jones v. United States*, 167 F.3d 1142 (7th Cir. 1999)**, the Seventh Circuit addressed for the first time the issue of the enforcement of a plea or cooperation agreement that also waives the right to file a petition under § 2255. The Seventh Circuit noted in ***Jones*** that so long as such a waiver is made knowingly and voluntarily, it is enforceable unless the defendant can establish a claim of ineffective assistance of counsel in connection with the negotiation of the agreement. ***Id.* at 1145.** In other words, "waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives *only with respect to those discrete claims which relate directly*

*to the negotiation of the waiver." Id.* **(emphasis added).**

Accordingly, ***Jones*** requires this Court to explore the nature of Shah's claims to determine if any of his challenges relate directly to the negotiation of the waiver. Shah asserts four main arguments regarding the ineffectiveness of his trial counsel: (1) trial counsel was ineffective for failing to file a motion to suppress evidence; (2) trial counsel was ineffective for failing to move to suppress statements; (3) trial counsel was ineffective for misleading Shah regarding the possibility of suppressing evidence and the consequences of Shah's guilty plea; and (4) trial counsel was ineffective for failing to move to withdraw the guilty plea after the trial court granted his co-defendant's motion to suppress (*see* Doc. 2). Only one of Shah's claims – his third argument – constitutes a "discrete claim[] which relate[s] directly to the negotiation of the waiver." ***See Jones*, 167 F.3d at 1145.** Accordingly, this Court must first consider that claim, for if Shah fails on this argument, the Court cannot consider the balance of his § 2255 petition. ***See Mason v. United States*, 211 F.3d 1065, 1069-1070 (7th Cir. 2000)** *citing **Jones***, **167 F.3d at 1145 (if ineffective assistance of counsel claim has nothing to do with the issue of a deficient negotiation of the waiver, petitioner has waived his right to seek post-conviction relief).**

*Shah's Claim of Ineffective Assistance of Council Regarding His Plea Agreement*

Claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." ***Massaro v. United States,* 538 U.S. 500, 504 (2003).** Under the law of this Circuit, because counsel is presumed effective, a party "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." ***United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995).** To

succeed, the defendant/§ 2255 petitioner must show that his counsel's performance fell below an *objective* standard of reasonableness and that this deficient performance so prejudiced his defense that he was deprived of a fair trial.  ***Id., citing Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).**  Stated another way, under the ***Strickland*** test, the defendant must show that his counsel's actions were not supported by a reasonable strategy, and that the error was prejudicial. ***Massaro,* 538 U.S. at 501.**

The first prong of the ***Strickland*** test, called the "performance prong," calls for the defendant to direct the Court to specific acts or omissions forming the basis of his claim.  ***Trevino,* 60 F.3d at 338.**  The Court then must determine whether, in light of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id.*  While making this assessment, the Court must be "mindful of the strong presumption that counsel's performance was reasonable." *Id. Accord Fountain v. United States*, **211 F.3d 429, 434 (7th Cir. 2000)(counsel is *presumed* effective, and court must bear this in mind when determining whether the allegedly deficient actions of counsel "were outside the wide range of professionally competent assistance").**

If the defendant satisfies the performance prong, he must then meet the "prejudice prong" of ***Strickland***.  This requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Emezuo v. United States,* 357 F.3d 703, 707-08 (7th Cir. 2004),** *citing Strickland,* **466 U.S. at 694.**  In the context of a guilty plea, a defendant must show that but for counsel's unprofessional errors, that defendant "would not have pleaded guilty and would have insisted on going to trial." ***Key v. United States,* 806 F.2d 133, 138 (7th Cir. 1986),** *citing Hill v. Lockhart,* **474 U.S. 52 (1985).**

In this matter, Shah asserts that his council was ineffective regarding the guilty plea by: (1) guaranteeing Shah that he would spend no more than six months in jail, regardless of the plea agreement, the Court's own statements, or any other agreement; (2) by advising him that "the police always win," and there was "no way to win" (Doc. 2, p. 11).

For support, Shah presents his own affidavit, as well as an affidavit signed by his father, Jamshed Shah (Doc. 2, Ex. A & B). In Shah's affidavit, he states that "at the December 6 and 12 meetings [with his trial counsel], [he] raised the issue that the plea agreement said 30 months and [he] thought his sentence would be six months" (Doc. 2, Ex. A, ¶ 14). Shah states that his trial attorney told him "not to worry about what the plea agreement said ... that [he] would serve only six months because the judge would order boot camp ..." *Id.* Shah also states that his trial attorneys "led [him] to believe that there was no chance of suppressing the evidence and no chance that [they] could succeed if [they] went to trial." *Id.* ¶ 11.

Jamshed Shah's affidavit, curiously, is nearly the exact same document as Babar Shah's affidavit, other than the replacement of the appropriate pronouns and a few other minor changes. In that document, Jamshed Shah, like Babar, swears that "Babar raised the issue that the plea agreement said 30 months and not six months, but [Babar's trial counsel] told Babar to ignore what the plea agreement said ... that [he] would get into boot camp and serve only six months" (Doc. 2, Ex. B, ¶ 13). Jamshed Shah also states that Babar's trial attorneys "led [him] to believe that there was no chance of suppressing the evidence and no chance that [they] could succeed if [they] went to trial." *Id.* ¶ 10.

Admittedly, if this Court were to find this testimony credible, and were to find that

10

Shah's attorneys did in fact make such assertions, it would then be incumbent upon this Court to determine whether those assertions constituted "unprofessional errors" that directly prejudiced Shah. ***Strickland,*** **466 U.S. at 694.** The Court need not take these analytic steps in this matter, however, for Shah's very own statements, made under oath to this Court at his change of plea hearing, directly contradict his present assertions.

At Shah's change of plea hearing, Shah specifically agreed that the "plea agreement [was] [his] entire understanding with the United States and there are no other understandings," and stated to this Court: "I understand everything, sir ... [i]t is fair" (C.P. Tr. at 17). Further, the Court asked Shah specifically, "[h]as anyone made any promises or assurances or guarantees of any kind to you, other than what is in the plea agreement, to get you to plead guilty here today ?" *Id.* at 17-18. Shah responded: "no, sir." *Id.* at 18.

Moreover, the plea agreement that Shah signed clearly states that "after all factors are considered ... the sentencing range is 37-46 months" (Doc. 15, Ex. 6, p. 5). At Shah's change of plea hearing, the Court repeatedly reminded Shah of this fact, telling him several times that he would be facing a sentencing range of 37 to 46 months. (C.P. Tr. p. 8, ln. 4; p. 10, lns. 15-16; p. 12, lns. 4-7). Each time the Court advised Shah of his possible sentence, Shah clearly stated that he understood this to be the range he faced. *See id.* At that hearing, Shah never once mentions a six-month sentence, nor does the Government, nor does the Court.

In light of the *multiple* statements Shah made to this Court while under oath at his change of plea hearing, the Court finds the present assertions by Shah and his father lacking in credibility. Because the directly contradictory nature of these statements alone is enough to establish

that Shah's present assertions are not credible, the Court, as stated, finds it unnecessary to hold an evidentiary hearing on this issue. Nonetheless, it bears mention that the Court was mindful of these inconsistencies in particular when it offered the parties the opportunity to present further testimony in the context of an evidentiary hearing. As this Court has already noted, however, Shah specifically declined this opportunity (*see* Doc. 21).

Regarding Shah's claim that his attorneys essentially ignored his suggestion that they move to suppress evidence, Shah's statements at his change of plea hearing contradict that position as well. At that hearing, Shah responded that he was "fully satisfied with the counsel, representation, and legal advice that [his counsel had given him]" and agreed that "[his counsel] ha[d] done everything that [he] ha[d] asked of them with regard to defending [him] in this case" (C.P. Tr. p.5). Shah further agreed that there was not "anything that [his counsel] had refused to do or been unwilling or unable to do with respect to the defense of [his] case that [he] had asked of them." *Id.* In fact, Shah stated "[t]hey are great, sir. Everything is fine ... No complaints." *Id.*

In addition, at the change of plea hearing, this Court specifically advised Shah that, by entering his guilty plea, he was "giving up [his] right to file any documents attacking the legality ... of the grand jury, the indictment against [him], [and] any improper search, seizure, line up or statement ..." (C.P. Tr. p.21). Shah replied "yes, sir" to the Court's inquiry as to whether he fully understood his waiver of those specific rights. *Id.*

Moreover, the testimony on this issue offered by Shah's trial counsel is consistent with Shah's statements at his change of plea hearing. By affidavit, Shah's trial counsel, Ronald R. Slemer and Allen H. Collins, assert that "they discussed with [Shah] facts, reports and the options

available ..." before entering a plea (Doc. 15, Ex. 1, p. 1). According to his counsel, Shah "appeared to fully understand those options and discussed the choices with his attorneys..." *Id.* Trial counsel asserts that "it was made clear to [Shah] that it was his choice to plea or go to trial [and] [Shah] chose to enter a plea." *Id.* at p. 2.

In addition, even if this Court were to accept Shah's present assertions on this issue, it still is not clear that the decision not to move to suppress fell "outside the wide range of professionally competent assistance." **Trevino, 60 F.3d at 338.** Shah's trial counsel, Ronald R. Slemer and Allen H. Collins, have provided this Court with a sworn affidavit asserting that they considered each and every relevant factor in Shah's underlying case when they "considered filing motions to suppress" (Doc. 15, Ex. 1, p. 1).

At the hearing held on this matter, Shah's counsel asserted that the fact that Zambrana ultimately prevailed on his own motion to suppress is evidence that counsel for Shah's decision to not move to suppress was somehow incompetent. This Court disagrees. At the time Shah chose to enter his plea, neither Shah – nor his counsel – could have predicted how this Court would rule on Zambrana's motion to suppress.

Even if they had, the facts and circumstances particular to *Shah* – as well as governing law – are unique to those relevant to Zambrana and Zambrana's motion to suppress. For instance, Seventh Circuit and Supreme Court law is sufficiently clear that a "mere passenger" in an automobile does not have an expectation of privacy in the vehicle – if he has an expectation at all – equivalent to a driver of the same vehicle. *See, e.g., United States v. Price,* **54 F.3d 342, 345-346 (7th Cir. 1995)("[A]s the provider and driver of the car [the driver] had a reasonable**

**expectation of privacy in it. This cannot be said of ... a mere passenger going along for the ride.");** *United States v. Lechuga,* **925 F.2d 1035, 1042 (7th Cir. 1991)(same);** *Rakas v. Illinois,* **439 U.S. 128, 148 (1978)(same).** This being the case, a minimal amount of legal research would have indicated that whatever the probability of success Zambrana, as the driver of the vehicle, might have had on his motion to suppress, Shah's probability was meager by comparison. Accordingly, even if this Court were to believe Shah's assertions regarding his counsel's performance, it is still unclear that such performance could be considered incompetent.

In sum, the record of this matter conclusively demonstrates that Shah is not entitled to the relief he seeks in his § 2255 petition. Because of Shah's directly contradictory statements, this Court cannot find that Shah has produced credible evidence to show that his trial counsel either: 1) incorrectly informed him that he would receive a sentence of six months, or 2) ignored his request to move to suppress. Moreover, even if this Court *were* to accept Shah's present assertions regarding his counsel's behavior, the record demonstrates that this behavior still might not constitute behavior falling so far outside of "the wide range of professionally competent assistance" as to overcome the strong presumption of effectiveness trial counsel enjoys. *Trevino,* **60 F.3d at 338, citing** *Strickland,* **466 U.S. at 694.**

Accordingly, the Court finds that Shah has not established "egregious deficiency" in any of his lawyers' representation regarding the negotiation of his plea agreement, and has not established that, but for such deficient representation, this matter "would have turned out differently." *United States v. Draves,* **103 F.3d 1328, 1335 (7th Cir.),** *cert. denied,* **521 U.S. 1127 (1997).** In other words, Shah has satisfied neither the performance prong nor the prejudice prong of *Strickland* regarding the negotiation of his plea agreement. Consequently, Shah's valid waiver of his right to collateral appeal is enforceable, and Shah is therefore barred from asserting the balance

of the arguments in his § 2255 petition.  Accordingly, the Court **DENIES** Shah's § 2255 petition (Doc. 1).

**IT IS SO ORDERED.**
**DATED this 25th  day of January, 2007.**

                                                                s/ Michael J. Reagan
                                                                **MICHAEL J. REAGAN**
                                                                **United States District Judge**